IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID C. BOULT,<br><br>　　　　　　Petitioner,<br><br>　　　vs.<br><br>SOTO, Warden, California State Prison, Los Angeles County,<br><br>　　　　　　Respondent. | No. 2:13-cv-02227-JKS<br><br>MEMORANDUM DECISION |

　　　　David C. Boult, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas

Corpus with this Court pursuant to 28 U.S.C. § 2254.  Boult is currently in the custody of the

California Department of Corrections and Rehabilitation and is incarcerated at California State

Prison, Los Angeles County.  Respondent has answered, and Boult has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

　　The California Court of Appeal recounted the factual background of this case as follows:

　　　　While on duty on the evening of April 23, 2010, Sacramento County Sheriff's
Deputy Steve LeCouve observed a car roll through a stop sign about 15 miles per hour.
LeCouve pursued the car as it [traveled] at 40 miles per hour in a 25-miles-per-hour zone
and rolled through two more stop signs.  Then LeCouve effected a traffic stop of the car.
　　　　Deputy LeCouve approached the stopped car and asked the driver for his license.
LeCouve noted that five people were in the car: the driver, a male; in the front seat, an
adult female (later identified as Brianne Knight); in the rear left seat, a male (identified as
[Boult]); in the rear center seat, a female juvenile (later identified as 15-year-old Kattie
O.); and in the rear right seat, another male.
　　　　Deputy LeCouve immediately noticed that [Boult] was very fidgety.  [Boult]
initially claimed that he had no identification.  Then he kneeled on the backseat and spun
around in order to face LeCouve.  This behavior made LeCouve nervous so he
unholstered his gun and told [Boult] to display his hands.  [Boult] reached down the front
of his pants, which alarmed LeCouve.  After LeCouve again demanded to see [Boult's]
hands, [Boult] raised his hands and produced his identification.

-1-

Deputy LeCouve walked backwards to his patrol car while closely watching [Boult]. In LeCouve's experience, furtive movements and actions of the sort displayed by [Boult] generally mean that a suspect is trying to conceal or retrieve an object. LeCouve requested backup units and indicated that he intended to search the stopped car. At that point, [Boult] was still "ducking," "dipping," "bouncing around, twisting around, looking in both directions," which made LeCouve "quite nervous." Because other sheriff's units were still some distance away, LeCouve requested assistance from Elk Grove Police Department officers who were closer to his location.

At this point, [Boult] got out of the car despite Deputy LeCouve's shouted command to remain inside. LeCouve pointed his gun at [Boult] and ordered him to get back in the car while keeping his hands in view. [Boult] did not comply; he looked at LeCouve, said, "I got to go," and then ran across the five traffic lanes of Calvine Road and headed toward Vintage Park Drive where LeCouve lost sight of him.

Deputy LeCouve remained at the scene of the traffic stop, holding the remaining occupants of the car at gunpoint while awaiting the arrival of other law enforcement units. A Sacramento Police Department helicopter joined the search for [Boult]. After other units arrived, the people in the car were ordered out at gunpoint. LeCouve immediately entered the rear passenger compartment, examined the area where [Boult] had been sitting, found ammunition on the floor, and saw the butt of a revolver protruding from under the driver's seat. When examined, the revolver was found to be fully loaded. The construction of the car is such that the gun could not have slid back from the driver's position to where it was found.

A flight officer from the Sacramento Police Department helicopter testified that the aircraft had been called to the scene of a traffic stop to conduct an aerial search for [Boult]. Soon after the crew received a description, they spotted [Boult] running through the area and saw him climb a fence and enter the rear yard of a residence. [Boult] was then taken into custody.

Kattie, age 16 at the time of trial, testified about the evening's events. Kattie had been riding in the rear seat of the car. [Boult], whom she had not met before, was seated to her left. They were on their way to a restaurant to purchase dinner. After the traffic stop, an officer approached the car and [Boult] began moving around, "[t]rying to figure out what to do with the guns." Kattie saw two guns in the car: one was silver, and the other was "black, brown" in color. The driver attempted to convince [Boult] to get out of the car and run away with one of the guns, because it was "dirty." The black gun, a revolver, was in a pocket on the rear of the driver's seat immediately in front of [Boult]. The driver handed [Boult] the other weapon, which was silver with black grips. [Boult] stated, "'I'm going to take one and I'm going to leave one.'" He tried to hide the silver gun under the driver's seat and then took off running.

Knight reluctantly testified under a grant of use immunity. Knight has a 2005 felony conviction for possession of rock cocaine for sale.

Knight confirmed that the five people in the car were on their way to purchase something to eat. She claimed she knew the driver only as "Anthony" and did not know [Boult] at all. Knight denied knowing anything about any firearms in the car, and she did not remember telling Deputy LeCouve anything about the presence of such firearms.

-2-

        Deputy LeCouve was recalled to the witness stand to impeach Knight's just-completed testimony.  LeCouve had interviewed Knight after the traffic stop, and she had said that she had been aware of the firearms in the car just before the traffic stop.  Knight further told LeCouve that, when he initiated the traffic stop, [Boult] "started freaking out and getting real nervous because he was holding a gun."

        After speaking to Knight, Deputy LeCouve spoke to Kattie.  Kattie told LeCouve that, after he obtained everyone's identification, [Boult] had pulled a .38–caliber revolver from his waistband and placed it on the floorboard along with a sock full of bullets, which he also retrieved from his pants.  Kattie told LeCouve that, immediately before getting out of the car, [Boult] had stated, "'I'm going to take one and I'm going to leave one.'"

        Sacramento County Sheriff's Deputy Richard Kemp testified that a police dog, which had been specially trained to locate firearms, searched for a semiautomatic pistol along the route [Boult] had used to flee the scene of the traffic stop.  Following a search of less than 20 minutes, the dog located the silver firearm.

        The defense rested without presenting evidence or testimony.

*People v. Boult,* No. C068324, 2012 WL 2525356, at *1-3 (Cal. Ct. App. July 2, 2012).

        A jury found Boult guilty of two counts of possession of a firearm by a convicted felon. *Id*. at *1.  In a bifurcated proceeding, Boult admitted that he had suffered two strike convictions and had served three prior prison terms.  *Id*.  The trial court dismissed one strike and sentenced him to state prison for an aggregate term of ten years and four months.  *Id*.

        Boult filed a counseled appeal to the Court of Appeal, arguing that the trial court violated his right to due process by failing to instruct the jury that it could not convict him unless the testimony of Kattie and Knight was corroborated, and that there was insufficient evidence that he unlawfully possessed either of the two firearms.  The Court of Appeal affirmed in a reasoned, unpublished opinion.  *Boult*, 2012 WL 2525356, at *5.

        Boult filed a counseled petition for review to the California Supreme Court in which he raised the same claims he unsuccessfully raised before the Court of Appeal.  The California Supreme Court summarily denied review.

Boult filed a *pro se* Petition for Writ of Habeas Corpus with this Court on October 22, 2013, the timeliness of which Respondent does not challenge. He filed an Amended Petition with this Court, which appears to be identical to his original Petition, on November 1, 2013.

## II. GROUNDS RAISED

In his *pro se* Amended Petition before this Court, Boult argues that the trial court erred in failing to instruct the jury that if it found that Kattie and Knight were accomplices that it could not convict him on their testimony alone unless their testimony was "properly corroborated." Boult additionally argues that there was insufficient evidence that he possessed either of the two firearms.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

<u>Claim One: Failure to instruct on the need for corroboration of accomplice testimony</u>

Boult first argues, as he did on direct appeal, that the trial court violated his right to due process when it failed to instruct the jury that, before it could consider Knight and Kattie's statements and testimony inculpating him, it would need to decide if they were accomplices, and that if the jury found them to be accomplices, it could not rely on their testimony alone to convict him.

The Court of Appeal rejected this claim as follows:

> [Boult] contends the trial court violated his due process rights by allowing the jury to find him guilty based solely on the "uncorroborated testimony of accomplices who had a motive to lie." He claims "the parties recognized that both Knight and Kattie could be deemed accomplices to the crimes," but "the trial court never instructed the jury that before it could consider Knight and Kattie's statements and testimony inculpating [him], it had to decide whether they were accomplices"; nor did the court instruct that, if

-5-

it found they *were* accomplices, it could not rely on their testimony alone to convict [him]. None of these claims has merit.

Prior to trial, the court appointed counsel for Knight and Kattie "so that counsel can confer with those witnesses regarding any potential Fifth Amendment issues pertaining to their testimony that they may give in this matter." Counsel for Kattie indicated he had advised her of her rights and indicated he had no issue with respect to her testifying. Counsel for Knight advised her to invoke her Fifth Amendment right. Ultimately, Knight testified under a grant of use immunity.

Following the close of evidence, the parties met out of the presence of the jurors to settle the issue of the jury instructions. Defense counsel did not request any instructions concerning accomplice corroboration. In the trial court's charge to the jurors, there were no instructions on the subject of accomplice corroboration.

"[Penal Code ] section 1111 provides: 'A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense. . . .' Under section 1111, an accomplice is 'one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.' An accomplice must have '"guilty knowledge and intent with regard to the commission of the crime."' [Citations.] 'If there is evidence from which the jury could find that a witness is an accomplice to the crime charged, the court must instruct the jury on accomplice testimony. [Citation.] But if the evidence is insufficient as a matter of law to support a finding that a witness is an accomplice, the trial court may make that determination and, in that situation, need not instruct the jury on accomplice testimony.' [Citation.]" (*People v. Gonzales and Soliz* (2011) 52 Cal. 4th 254, 302.)

Here, the trial court made no determination that Knight was not an accomplice as a matter of law, nor did the court give the accomplice instructions.

"Section 1111 codifies common law concerns about the reliability of accomplice testimony. [Citation.] '[S]uch testimony has been legislatively determined never to be sufficiently trustworthy to establish guilt beyond a reasonable doubt unless corroborated.' [Citation.] Our analysis of harmless error in the omission of accomplice instructions reflects the idea that sufficient corroboration allays the concerns regarding unreliability embodied in section 1111. Thus, even in cases where the full complement of accomplice instructions (including CALJIC No. 3.18) was erroneously omitted, we have found that sufficient corroborating evidence of the accomplice testimony rendered the omission harmless. [Citations.] [T]he evidence of corroboration is 'sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth.' [Citation.]" (*People v. Gonzales and Soliz, supra,* 52 Cal. 4th at pp. 303-304.)

[Boult's] claim that "both Knight and Kattie could be deemed accomplices" is based, not upon statutory analysis, but upon the trial court's appointment of counsel for both witnesses prior to trial. However, section 1111 makes plain that Kattie was not an accomplice. An accomplice is defined as "one who is liable to prosecution for *the identical offense charged* against the defendant," i.e., possession of a firearm *by a felon.* (§ 1111; italics added.) Nothing in the record suggested that 16-year-old Kattie was a

-6-

> *felon.* Thus, even if she were liable to prosecution for *some* firearm-related offense that warranted the appointment of counsel in an abundance of caution, she was *not* liable for the *identical offense charged against defendant* and could not have been his accomplice.
> 
> In this case, there was sufficient corroboration regardless of whether Knight was in fact an accomplice.
> 
> Apart from Kattie's testimony, Deputy LeCouve found one of the firearms and bullets evidently within inches of where [Boult] had been sitting in the car while engaging in a variety of furtive activity that, the officer suspected, involved secreting something unlawful in the car. And after LeCouve observed [Boult's] flight from the scene of the traffic stop, another officer and his police dog located a firearm that, in light of its proximity in time and distance, [Boult] obviously had discarded while attempting to evade capture.
> 
> Thus, because Knight's testimony was abundantly and sufficiently corroborated, there was no danger of [Boult] being convicted on the basis of uncorroborated testimony. [Boult's] section 1111 and related due process claims necessarily fail.

*Boult*, 2012 WL 2525356, at *3-4 (footnote omitted).

Boult fails to raise a claim that is cognizable on federal habeas review because state court rulings on state law are not reviewable by this Court. The United States Supreme Court has held that "there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them." *Caminetti v. United States*, 242 U.S. 470, 495 (1917); *see United States v. Necoechea*, 986 F.2d 1273, 1282 (9th Cir. 1993) ("The uncorroborated testimony of an accomplice is sufficient to sustain a conviction unless it is incredible or insubstantial on its face."). "When we look at the requirements of procedural due process, the use of accomplice testimony is not catalogued with constitutional restrictions." *United States v. Augenblick*, 393 U.S. 348, 352 (1969). Therefore, the requirement of California Penal Code § 1111 that "'a conviction cannot be had upon the testimony of an accomplice unless it be corroborated' is a matter of state law, which does not implicate a federal constitutional right" and cannot be the basis of federal habeas relief. *Barco v. Tilton*, 694 F. Supp. 2d 1122, 1136 (C.D. Cal. 2010). Boult accordingly cannot prevail on his instructional error claim.

-7-

Claim Two: Insufficient evidence

Boult next argues that there was insufficient evidence that he actually or constructively possessed either firearm because he did not have dominion over them.

The Court of Appeal rejected this claim on direct appeal as follows:

> In a separate but related argument, [Boult] contends both his convictions must be reversed because there was no "substantial and credible evidence" that he possessed either firearm. He reasons that, because he did not have general dominion and control over either location where a firearm was found, his convictions cannot rest upon his mere presence in the car or along the path of his flight. Thus, he argues, further evidence was required, but the only additional evidence on the point was "the uncorroborated statements and testimony of accomplices Knight and Kattie." We are not persuaded.
> "On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt. [Citations.] Evidence meeting this standard satisfies constitutional due process and reliability concerns. [Citations.] [¶] While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the [judgment], and must presume every fact the jury could reasonably have deduced from the evidence. [Citations.] Issues of witness credibility are for the jury. [Citations.]" (*People v. Boyer* (2006) 38 Cal. 4th 412, 479-480.)
> Section 29800, subdivision (a)(1), provides in relevant part: "Any person who has been convicted of a felony under the laws of . . . the State of California . . . and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony."
> "The elements of the offense proscribed by section [29800, subdivision (a)(1)] are conviction of a felony and ownership, possession, custody or control of a firearm. [Citations.] Knowledge is also an element of the offense. [Citation.] [¶] As with any crime or public offense, in order to prove a violation of section [29800, subdivision (a)(1)], the prosecution must prove, beyond a reasonable doubt, a union, or joint operation of act and intent. [Citation.] No specific criminal intent is required for this crime; general intent to commit the proscribed act is sufficient to sustain a conviction. [Citations.] [W]hether possession is actual or constructive, it must be intentional." (*People v. Jeffers* (1996) 41 Cal. App. 4th 917, 922.)
> Thus, a convicted felon who owns, possesses, or has custody or control of a firearm commits a felony. "Implicitly, the crime is committed the instant the felon in any way has a firearm within his control." (*People v. Ratcliff* (1990) 223 Cal. App. 3d 1401, 1410; italics omitted.)
> Kattie testified that she saw two different firearms in the car: one was a revolver in a pocket on the back of the driver's seat inches in front of [Boult]. She witnessed a discussion between [Boult] and the driver concerning two pistols, one of which was

-8-

>described as "dirty."  Following this discussion, the driver handed defendant a second, silver gun.  At that point, [Boult] said, "'I'm going to take one [gun] and I'm going to leave one.'"  After trying to hide one gun under the driver's seat, [Boult] took off running with the other gun.  The revolver was later found by law enforcement officers, partially concealed on the floorboard beneath the driver's seat.  The other gun was found on the path of [Boult's] flight from the car.
>
>> The jury impliedly credited this evidence and testimony when it found defendant guilty on both counts.  Both convictions are supported by substantial evidence.  (*People v. Boyer, supra,* 38 Cal. 4th at pp. 479-480.)

*Boult*, 2012 WL 2525356, at *4-5.

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).  This Court must therefore determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set

forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted). It is through this lens that this Court must view an insufficiency of the evidence claim.

     Boult's arguments with regard to his legally insufficiency of the evidence claim are nothing more than an attack on the testimony against him. However, this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *Schlup v. Delo*, 513 U.S 298, 330 (1995); *Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004). Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *Schlup*, 513 U.S. at 330. In this case, Kattie saw two guns in the car, heard Boult state that he was going to take one of the guns and leave the other, and saw him hide one and run off with the other. One firearm was found under the driver's seat and the other was found in Boult's path of flight from the scene. Although it might have been possible to draw a different inference from the evidence and any contradictions in testimony, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Boult bears the burden of establishing by clear and convincing evidence that the state court's upholding of the jury's factual findings against him was erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The record does not

compel the conclusion that no rational trier of fact could have found proof that Boult was guilty of possession of a firearm by a felon, especially considering the double deference owed under *Jackson* and AEDPA.  Boult is therefore not entitled to relief on this claim either.

## V. CONCLUSION AND ORDER

Boult is not entitled to relief on any ground raised in his Amended Petition.

**IT IS THEREFORE ORDERED THAT** the Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: August 6, 2014.

>                          /s/James K. Singleton, Jr.
>                          JAMES K. SINGLETON, JR.
>                          Senior United States District Judge